979 So.2d 957 (2007)
XEROX CORPORATION and Ricardo Vescovacci, Appellants,
v.
SMARTECH DOCUMENT MANAGEMENT, INC., and Jose Hernandez, Appellees.
No. 3D06-2246.
District Court of Appeal of Florida, Third District.
November 28, 2007.
Rehearing Denied May 15, 2008.
*958 Thomas & LoCicero and James J. McGuire, Tampa, for appellants.
Mesa & Associates and Manuel A. Mesa, Miami, for appellees.
Before COPE, SUAREZ, and LAGOA, JJ.
COPE, J.
Xerox Corporation and Ricardo Vescovacci appeal an order denying their motion to compel arbitration. We reverse because the arbitration clause covers the dispute, and the question of time bar is for the arbitrator, not the trial court.
Smartech and Hernandez filed a lawsuit against Xerox and Vescovacci alleging defamation, intentional infliction of emotional distress, injunctive relief, respondeat superior, and intentional interference with an advantageous business relationship.
Jose Hernandez is the president and principal shareholder of Smartech, which was an authorized Xerox sales agent selling copiers and equipment pursuant to the *959 Xerox Business Relationship Agreement ("Agreement") and incorporated Authorized Sales Agent Schedule. Hernandez signed the Agreement as president of Smartech. Xerox terminated the Agreement because of alleged unethical conduct involving Smartech's customers that purchased copiers and then failed to pay for them. Smartech claims that Xerox and Vescovacci made false statements to third parties, including colleagues and customers, that Smartech and Hernandez had stolen equipment and had conspired to defraud them.
In response, Xerox moved to compel arbitration. Xerox also filed an arbitration demand with the American Arbitration Association ("AAA") alleging Smartech had stolen or caused the disappearance of more than $1.2 million of equipment. Xerox then amended its demand for arbitration adding claims of $300,000 overpayment of commissions to Smartech, and $135,000 in bonuses and other rewards to which Smartech and Hernandez were not entitled.
Smartech and Hernandez answered the amended demand for arbitration and objected to the jurisdiction of the AAA. Smartech asserted, among other things, that Xerox's claims pending before the AAA were barred by a one-year contractual statute of limitations contained in the Agreement and the arbitration provision was not binding on Hernandez individually. The trial court denied Xerox's motion to compel arbitration, and this appeal followed.
Because the parties' agreement involves interstate commerce, the arbitration clause is governed by the Federal Arbitration Act, 9 U.S.C. § 1. "Under both federal statutory provisions and Florida's arbitration code, there are three elements for courts to consider in ruling on a motion to compel arbitration of a given dispute: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived." Seifert v. U.S. Home Corp., 750 So.2d 633, 636 (Fla.1999) (citation omitted).
Smartech and Hernandez argue there is no arbitrable issue because, in their view, their lawsuit falls outside the scope of the arbitration clause. We disagree. The arbitration clause has a broad definition of arbitrable disputes which, with certain exceptions, covers "any and all claims, actions, and suits . . . arising out of or in any way relating to this Agreement . . . between the parties, regardless of whether the claim is based upon tortious conduct (including negligence) or any other theory at law or in equity. . . . "[1]
*960 Smartech and Hernandez have asserted five counts in their complaintdefamation, intentional infliction of emotional distress, injunctive relief, respondeat superior, and intentional interference with an advantageous business relationshipeach of which constitutes a Covered Dispute because each arises out of or is related to the parties' relationship under the Agreement. See Seifert, 750 So.2d at 638; Roth v. Cohen, 941 So.2d 496, 500 (Fla. 3d DCA 2006).
Smartech and Hernandez argue that Xerox's demand for arbitration is untimely. They rely on a provision of the Agreement which contains a one-year time limit for making an arbitration demand.[2]
Under the Federal Arbitration Act, the question of time bar is presumptively for the arbitrator, not the judge. Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84-85, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002). The Agreement is silent on whether the one-year time bar is an issue for the arbitrator or the judge. That being so, the question whether the claim is time-barred must be submitted to the arbitrator. See id.; O'Keefe Architects, Inc. v. CED Constr. Partners, Ltd., 944 So.2d 181, 186-88 & n. 6 (Fla.2006).
Smartech and Hernandez argue that Xerox is in material breach of its obligation under the Agreement by failing to pay commissions that are owed. Smartech and Hernandez contend that if Xerox has breached its contractual obligations, then Xerox cannot enforce the contract including the arbitration clause. That argument is incorrect. The arbitration clause presupposes the possibility of a breach on one side or the other, and specifies the mechanism for resolving the dispute. The existence of such a breach does not void the arbitration clause. See Cintas Corp. No. 2 v. Schwalier, 901 So.2d 307, 308-09 (Fla. 1st DCA 2005); Passerrello v. Robert L. Lipton, Inc., 690 So.2d 610, 611 (Fla. 4th DCA 1997).
Finally, we find that Jose Hernandez, individually, also is bound by the Agreement and the arbitration clause. Mr. Hernandez signed the Agreement on behalf of Smartech, and he is Smartech's owner, president, authorized agent, and employee. Hernandez' claims are based upon, and intertwined with, the underlying contract between Xerox and Smartech. In such circumstances, the doctrine of equitable estoppel applies and Hernandez is bound by the arbitration clause. See McBro Planning & Dev. Co. v. Triangle Elec. Constr. Co., 741 F.2d 342, 344 (11th Cir.1984).
*961 Accordingly, we reverse the order denying Xerox's motion to compel arbitration and remand for further proceedings.
NOTES
[1] The arbitration clause incorporates the definition of "Covered Disputes" contained in the limitation of liability section of the Agreement. The definition states in full:

The limitations of liability in this Subsection 7.2 shall cover any and all claims, actions, and suits other than the excepted disputes listed below arising out of or in any way relating to this Agreement or any previous Business Relationship, Authorized Sales Agent, or Authorized Dealer Agreements between the parties, regardless of whether the claim alleges or is based upon tortious conduct (including negligence) or any other theory at law or in equity ("Covered Disputes"). By way of example, and not restriction, Covered Disputes shall expressly include (a) any matters in which one party names one or more employees of the other as individual defendants (with such individual employees to be considered third party beneficiaries of this limitation as well as the arbitration provisions set out below) and (b) any matters arising out of or related to the undertaking, breach, non-renewal, or termination of this Agreement or any previous Business Relationship, Authorized Sales Agent, or Authorized Dealer Agreements between the parties. The only disputes that shall be excepted from this limitation, and thereby excepted as well from the requirements of Section 7.3 [the arbitration clause], are disputes regarding: (a) liabilities to third parties arising out of indemnified matters; (b) transactions involving the acquisition of products and/or services by Business Associate from Xerox; and (c) the use or retention of either party's intellectual property or confidential, proprietary, or sensitive information.
[2] The Agreement provides:

The parties agree that the arbitration of any Covered Dispute (including every claim covered therein) must be brought via a written arbitration demand filed with the American Arbitration Association within one year of the date of the underlying activities giving rise to the dispute (regardless of when the complaining party learns or could have learned of any particular facts surrounding the dispute). The parties agree to this provision and thereby waive their right to arbitrate or otherwise contest in any forum all Covered Disputes related to this Agreement or any previous agreements between them (as more fully set forth in Section 7.2) outside the scope of this one-year limitation. The parties make this waiver notwithstanding any longer periods generally available for arbitrating or litigating disputes under any otherwise applicable statutes, common law, or other authority.